PEATROSS, Judge.
This is an appeal from a judgment of the trial court dismissing with prejudice Plaintiffs, Central-Herrin Storage and Transfer Company, Inc. (“Central Herrin”), claim at the close of its presentation of evidence. Central-Herrin filed suit against Cordell and Company Insurance Agency, Inc. (“Cordell”), Fireman’s Fund Insurance Company, American Automobile Insurance Company and Cordell’s error and omissions insurer, Employers Reinsurance Corporation, seeking to recover damages sustained when one of Central-Herrin’s trucks was destroyed by fire. At the close of Central-Herrin’s case in chief, Fireman’s Fund Insurance Company and American Automobile Insurance Company moved for an involuntary dismissal under La. C.C.P. art. 1672(B). The motion was granted by the trial court, dismissing with prejudice Central-Herrin’s claim as to those defendants. The claim against Cor-dell and Employers Reinsurance Corporation was submitted on briefs, with those defendants declining to call any witnesses. In a subsequent judgment finding that Central-Herrin failed to carry its burden *1224 of proof, the trial court also dismissed with prejudice the claim against Cordell and Employers Reinsurance Corporation. It is from this second judgment only that Central-Herrin now appeals. For the reasons stated herein, we affirm.

FACTS

Central-Herrin is a moving and storage company that was owned and operated by John and Ann Anderson until Mr. Anderson’s death in 1997. Prior to his death, Mr. Anderson handled most business matters for the company, including adding to and deleting vehicles from the insurance Impolicy provided by Cordell, which specializes in insurance for moving and storage companies nationally. After Mr. Anderson’s death, Mrs. Anderson assumed a more active role in the daily management of the business and Hal Montgomery, a third stockholder in the company, was elected president of Central-Herrin and assumed the major duties for which Mr. Anderson had previously been responsible.
The dispute in the present case concerns coverage obtained for a 1987 truck that Mr. Montgomery and Mrs. Anderson had decided to add to Central-Herrin’s fleet. The truck was to be purchased with money loaned from Region’s Bank (formerly Min-den Bank and Trust) through banker, Mike Burton. The record indicates that Mr. Burton had verbally agreed to the loan provided Mr. Montgomery sent him proof of “full coverage” insurance on the truck to protect against loss of the vehicle. (The bank requires comprehensive and collision coverage, which Mr. Montgomery terms “full coverage.”) A proof of insurance card was obtained from Cordell and faxed to Mr. Burton, who then released the funds to Central-Herrin and the truck was purchased. Less than one month later, the truck was totally destroyed by fire. Cordell denied Central-Herrin’s claim on the destroyed truck, advising that there was liability coverage only. Hence, the dispute in this case revolves around the circumstances of the addition of the truck to Central-Herrin’s policy and the type of insurance coverage requested and subsequently provided. The record reveals the following scenario.
lüMr. Montgomery asked Mrs. Anderson to call Cordell and add the vehicle to Central-Herrin’s policy. (We note that, while Mrs. Anderson had contacted Cordell in the past, it was usually to make a claim or discuss payment of a claim while the addition or deletion of vehicles was ordinarily handled by Mr. Anderson.) Mr. Montgomery also requested that Mrs. Anderson have proof of insurance faxed to them so that they could then fax the proof of insurance to Mr. Burton at the bank. Mrs. Anderson called Cordell and spoke with Sonja Collier, a long-time (30-year) employee of Cordell’s. According to the testimony, Ms. Collier is very experienced in this specialized field of insurance. The testimony differs as to the content of the conversation between Mrs. Anderson and Ms. Collier-which is the critical evidence in this case. Mrs. Anderson testified that she told Ms. Collier that proof of insurance was needed for “the bank,” which, according to Central-Herrin, should have put Ms. Collier on notice that there was a lender involved and, therefore, that comprehensive and collision coverage was required. Mrs. Anderson admits, however, that she did not specifically request comprehensive or collision, nor did she say “full coverage” was needed. On the other hand, Ms. Collier testified that a “bank” was never mentioned and that she inquired whether there was financing on the truck, to which Mrs. Anderson replied “no.” Ms. Collier further testified that, had she known there was a bank involved, she would have had to get additional informa *1225 tion on the vehicle and the lender, which she did not do. Mrs. Anderson admitted that she did not provide this information to Ms. Collier.
| ¿Following the above conversation, Ms. Collier issued an endorsement providing liability insurance only on the truck, proof of which she faxed to Mrs. Anderson, who faxed the same to Mr. Burton at the bank. No one noticed that the endorsement was only proof of liability coverage and not comprehensive or collision. As previously stated, the bank released the money, the truck was purchased and was destroyed by fire shortly thereafter. Cordell denied Central-Herrin’s claim and the current litigation ensued.

DISCUSSION

Central-Herrin argues that Cordell had a duty to “adequately determine the type of insurance needed” by its insured, which it failed to do. According to Central-Herrin, this failure resulted in incomplete coverage of the truck, which, in turn, caused a loss to Central-Herrin with the destruction of the truck. Cordell, on the other hand, relies on the manifest error standard of review arguing that Central-Herrin did not identify any error in the trial court’s findings of fact, but only argues that the trial judge did not give sufficient weight to certain testimony.
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989). The issue to be resolved by the reviewing court is not whether the trier of fact was right or "wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). Where there is conflict in the testimony, reasonable evaluations of credibility and treasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell, supra. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court; but, if the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous/clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. Id.
The trial court provided thorough and detailed findings of fact in its written reasons for judgment:
1) Central-Herrin’s principal business is moving and storage. For a number of years prior to the events involved in this litigation, the plaintiff used Cordell and Company Insurance Agency, Inc. (“Cor-dell”) as its agent to procure insurance for its trucks. Central-Herrin’s general practice was to request liability, comprehensive, and collision coverage on those vehicles it had mortgaged to the bank, and only liability coverage on those vehicles with no lien. Requests to add or delete vehicles from the policy were generally made by Mr. John Anderson, the president of Central-Herrin, or Mrs. Ann Anderson, his wife. Mr. Anderson passed away shortly before the events which are the subject of this suit occurred, and Mr. Hal Montgomery took over as president of Central-Herrin shortly after Mr. Anderson’s death;
*1226 2) in late July or early August, Central-Herrín decided to purchase another truck to add to its fleet. Mr. Montgomery made arrangements with Minden Bank & Trust Company for | fithe company to borrow the purchase price from the bank and to use the new truck as collateral;
3) on August 5, 1997, Mr. Montgomery asked Mrs. Anderson to call Cordell and arrange for insurance coverage for the new truck. Mrs. Anderson testified that although she had spoken with the Cor-dell agency on a number of occasions, those discussions were primarily related to reporting losses or damage claims by customers and negotiating the value of those claims. Mrs. Anderson had, on a few occasions at the request of Mr. Anderson, called the agency to add or delete vehicles owned by Central-Her-rín;
4) on August 5, 1997, Mrs. Anderson called the Cordell Agency and spoke with Sonja Collier. She asked Ms. Collier to add the new truck to Central-Herrin’s policy. Both Ms. (sic) Anderson and Ms. Collier testified that there was no information exchanged about the value of the truck, the name and address of the loss payee, or that the insurance identification card was to be provided to anyone other than Central-Herrín;
5) that same day, Ms. Collier faxed a copy of the insurance identification card to Mrs. Anderson. An endorsement was issued to Central-Herrin’s policy adding the new truck, but the endorsement provided for liability coverage only;
6) Mrs. Anderson testified that she recalls telling Ms. Collier that they “needed insurance for the bank”, and that they needed “proof of insurance.” The insurance identification card faxed by Ms. Collier to Mrs. Anderson, and subsequently presented to the bank by Central-Herrín, simply reflects that the vehicle is covered by the minimum liability insurance required by the Louisiana Motor Vehicle Safety Responsibility Act, and does not mention any other coverages;
7) Ms. Collier testified that during their conversation, she asked Mrs. Anderson if there was a loan on the vehicle and Mrs. Anderson answered “no.” Had there been a loan involved, not only would comprehensive and collision coverage have been required, but Ms. Collier would have been required to obtain additional information from Mrs. Anderson about the value of the vehicle and the name, address, telephone and fax numbers of the loss payee so that the coverage information could be provided to the loss payee;
8) on or about August 28,1997, the vehicle was destroyed by fire. The insurer denied payment of the claim, contending that[7the endorsement issued on August 5, 1997, provided only liability coverage.
The above factual findings provided the bases for the trial court’s legal conclusions: (1) that the truck had liability coverage only and (2) that, while both Mrs. Anderson and Ms. Collier were credible witnesses, the conflicting accounts of their conversation and the documentary evidence were insufficient to meet the burden of proof of negligence on the part of Cor-dell or the breach of any duty owed by Cordell to Central-Herrín.
On appeal, Central-Herrín specifically complains of the following enumerated “errors” on the part of the trial court: (1) the trial court “completely ignored” that Cor-dell had a duty to determine the insurance needs of Central-Herrín; (2) the trial court “completely ignored” that Mr. Burton accepted the insurance card as proof of insurance; (3) the trial court “completely ignored” the unlikelihood that Mrs. Anderson would have advised Ms. Collier that the vehicle was not being financed; *1227 (4) the trial court “ignored” Mr. Cordell’s incorrect testimony that his company was licensed-in Louisiana and (5) the trial court “ignored” that Mr. Cordell testified that he did not hear the entire conversation between Mrs. Anderson and Ms. Collier, but also testified that a “bank” was never mentioned.
While certainly the above assigned “errors” reveal dissatisfaction with the trial court’s weighing of the evidence presented, none of the alleged “errors” constitute manifest error on the part of the trial court in its factual findings, nor do they render the findings of the trial court clearly wrong. The only positive evidence in this record that supports Central-Herrin’s claim is Mrs. Anderson’s testimony that she referenced the “bank” | Rin her conversation with Ms. Collier. On the other hand, Ms. Collier testified that she specifically inquired as to whether there was financing on the truck, to which Mrs. Anderson replied “no.” Further, Mrs. Anderson admitted that she provided no information on the truck or the loss payee to Ms. Collier. We find no error in the trial court’s conclusion that the contradictory testimony presented was insufficient to carry Central-Herrin’s burden of proof in this case.

CONCLUSION

For the foregoing reasons, the judgment of the trial court in favor of Defendants Cordell and Company Insurance Agency, Inc. and Employers Reinsurance Corporation dismissing with prejudice Plaintiffs, Central-Herrin Storage and Transfer Company, Inc., claim is affirmed. Costs are assessed to Plaintiff, Central-Herrin Storage and Transfer Company, Inc.
AFFIRMED.